UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

APPLE, INC.,
Petitioner,

v.

PERSONALWEB TECHNOLOGIES, LLC, and
LEVEL 3 COMMUNICATIONS, LLC,
Patent Owners.

———————————

Case IPR2013-00596
Patent Number 7,802,310

———————————

**PATENT OWNER'S NOTICE OF APPEAL**

Pursuant to 35 U.S.C. § 142 and 37 C.F.R. § 90.2(a), Patent Owner hereby appeals to the United States Court of Appeals for the Federal Circuit from the Final Written Decision entered on March 25, 2015, the Decision on Patent Owner's Request for Rehearing entered on August 3, 2015, and from all orders, decisions, rulings, and opinions underlying or supporting the Final Written Decision and/or Decision on Patent Owner's Request for Rehearing.

For the limited purpose of providing the Director with the information requested in 37 C.F.R. § 90.2(a)(3)(ii), issues on appeal may include but are not limited to the Board's determinations of unpatentability of claims and any finding or determination supporting or relating to such determinations of unpatentability including but not limited to claim construction issues, the applicable claim construction standard, obviousness issues, Board findings that conflict with the evidence of record and are not supported by substantial evidence, as well as all other issues decided adversely to Patent Owner in any orders, decisions, rulings and/or opinions.

Patent Owner reserves the right to challenge any finding or determination supporting or relating to the issues listed above and to challenge any other issues decided adversely to Patent Owner by the PTAB in this proceeding.

This document is being filed both electronically with the PTAB and by hand with the Office of the General Counsel. In addition, three copies of this Notice of

Office for the United States Court of Appeals for the Federal Circuit.

Case: 16-1174    Document: 1-2    Page: 3    Filed: 11/09/2015

Appeal, along with the required docketing fees, are being filed with the Clerk's

Office for the United States Court of Appeals for the Federal Circuit.

Respectfully submitted,

Dated: Sept. 30, 2015                    By: /Joseph A. Rhoa/
                                         Joseph A. Rhoa
                                         Reg. No. 37,515
                                         Updeep (Mickey) S. Gill
                                         Reg. No. 37,334
                                         Attorneys for Patent Owner,
                                         PersonalWeb Technologies, LLC

                                         NIXON & VANDERHYE P.C.
                                         (Customer No.: 23117)
                                         901 North Glebe Road
                                         11th Floor
                                         Arlington, VA  22203
                                         Tel: (703) 816-4000
                                         Fax: (703) 816-4100

Trials@uspto.gov
571-272-7822

Paper 33
Entered: March 25, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

APPLE, INC.,
Petitioner,

v.

PERSONALWEB TECHNOLOGIES, LLC, and
LEVEL 3 COMMUNICATIONS, LLC,
Patent Owners.

———————

Case IPR2013-00596
Patent 7,802,310 B2

———————

Before KEVIN F. TURNER, JONI Y. CHANG, and
MICHAEL R. ZECHER, *Administrative Patent Judges*.

TURNER, *Administrative Patent Judge*.

FINAL WRITTEN DECISION
*Inter Partes* Review
*35 U.S.C. § 318(a) and 37 C.F.R. § 42.73*

# I. INTRODUCTION

Apple, Inc. ("Apple") filed a Petition (Paper 1, "Pet.") requesting *inter partes* review of claims 24, 32, 70, 81, 82, and 86 of U.S. Patent No. 7,802,310 B2 ("the '310 Patent," Ex. 1001). Patent Owners, PersonalWeb Technologies LLC and Level 3 Communications, LLC (collectively "PersonalWeb"), filed a Preliminary Response (Paper 8). On March 26, 2014, we instituted an *inter partes* review of claims 24, 32, 70, 81, 82, and 86 on a single ground of unpatentability alleged in the Petition. Paper 9, "Dec."

After institution of trial, PersonalWeb filed a Patent Owner Response ("PO Resp.," Paper 15) and Apple filed a Reply thereto ("Reply," Paper 22). An oral argument was held on November 17, 2014. The transcript of the oral hearing has been entered into the record. Paper 31.

We have jurisdiction under 35 U.S.C. § 6(c). This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73.

Apple has shown by a preponderance of the evidence that all claims for which trial is instituted, claims 24, 32, 70, 81, 82, and 86 of the '310 Patent, are unpatentable.

## A. *Related Matters*

Apple indicates that the '310 Patent was asserted against it in *PersonalWeb Tech. LLC v. Apple Inc.,* Case No. 6:12-cv-00660-LED, pending in the U.S. District Court for the Eastern District of Texas. Pet. 2.

IPR2013-00596
Patent 7,802,310 B2

Other petitions seeking *inter partes* review of PersonalWeb's patents were filed previously, with those patents and the '310 Patent sharing a common disclosure. *Id*. at 3–4. Another Petition, filed in Case IPR2014-00062, was pending regarding the '310 Patent, but that proceeding, as well as the proceedings involving patents with common disclosures, were terminated based on a settlement reached between the parties. IPR2014-00062, Paper 33.

## B. The '310 Patent (Ex. 1001)

The '310 Patent relates to a data processing system that identifies data items using substantially unique identifiers, otherwise referred to as True Names, which depend on all the data in the data item and only on the data in the data item. Ex. 1001, 1:44–48, 3:52–55, 6:20–24. According to the '310 Patent, the identity of a data item depends only on the data and is independent of the data item's name, origin, location, address, or other information not derivable directly from the data associated therewith. *Id*. at 3:55–58. The invention of the '310 Patent also provides that the system can publish data items, allowing other, possibly anonymous, systems in a network to gain access to the data items. *Id*. at 4:32–34.

3

IPR2013-00596
Patent 7,802,310 B2

### C. *Illustrative Claim*

The '310 Patent includes claims 1–87, of which a trial was instituted on claims 24, 32, 70, 81, 82, and 86. Of those the challenged claims, claims 24, 70, 81, and 86 are independent claims. Independent claim 70 is reproduced below:

> 70. A computer-implemented method operable in a system which includes a network of computers, the system implemented at least in part by hardware including at least one processor, the method comprising the steps of:
>
> in response to a request at a first computer, from another computer, said request comprising at least a content-based identifier for a particular data item, the content-based identifier for the particular data item being based at least in part on a given function of at least some data which comprise the contents of the particular data item, wherein the given function comprises a message digest or a hash function, and wherein two identical data items will have the same content-based identifier:
>
> (A) hardware in combination with software, determining whether the content-based identifier for the particular data item corresponds to an entry in a database comprising a plurality of content-based identifiers; and
>
> (B) based at least in part on said determining in step (A), selectively permitting the particular data item to be accessed at or by one or more computers in the network of computers, said one or more computers being distinct from said first computer.

Ex. 1001, 44:1–23.

### D. *Prior Art Relied Upon*

The following prior art references were relied upon in the instituted ground of unpatentability:

4

IPR2013-00596
Patent 7,802,310 B2

| Woodhill | US 5,649,196 | July 15, 1997 | (Ex. 1014) |
| Stefik | US 7,359,881 B2 | Apr. 15, 2008 | (Ex. 1013) |

### E.  Ground of Unpatentability Instituted for Trial

The following table summarizes the challenge to patentability that
was instituted for *inter partes* review:

| References | Basis | Claims challenged |
|---|---|---|
| Woodhill and Stefik | § 103 | 24, 32, 70, 81, 82, and 86 |

## II. ANALYSIS

### A.    Claim Construction

In an *inter partes* review, claim terms in an unexpired patent are given
their broadest reasonable construction in light of the specification of the
patent in which they appear.  37 C.F.R. § 42.100(b).  Absent any special
definitions, claim terms are given their ordinary and customary meaning, as
would be understood by one of ordinary skill in the art in the context of the
entire disclosure. *In re Translogic Tech, Inc.*, 504 F.3d 1249, 1257 (Fed.
Cir. 2007).

### 1.  The Standard to be Applied in Claim Construction

PersonalWeb asserts that the proper claim construction standard to be
applied in this proceeding should not be the broadest reasonable construction
consistent with the Specification, given the imminent expiration of the '310
Patent on April 11, 2015.  PO Resp. 10.  PersonalWeb argues that the proper

IPR2013-00596
Patent 7,802,310 B2

standard to be applied is that laid out by the United States Court of Appeals for the Federal Circuit in *Phillips* v. *AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). PO Resp. 10. PersonalWeb also argues that it has no ability to amend the patent and that no appeal will take place until after the patent expires. *Id*. We do not agree. PersonalWeb *had* the ability to file a Motion to Amend and have it be considered in this proceeding. Such consideration of any motion to amend could have been expedited in view of the expiration of the '310 Patent, but no such motion was filed or contemplated. *See* Paper 13, 2.

> PersonalWeb also argues that:

> [T]he USPTO has no authority to change the claim construction standard required by *Phillips* for IPR proceedings because an IPR is not an examination proceeding and the applicable claim construction standard is a substantive issue (not a mere procedural issue). *Cooper Techs. Co. v. Dudas,* 536 F.3d 1330,1335 (Fed. Cir. 2008).

PO Resp. 10. The Federal Circuit has determined, however, that the claim construction standard to be applied to claims of an unexpired patent in an *inter partes* review is the broadest, reasonable claim construction standard. *See In re Cuozzo Speed Techs., LLC*, No. 2014-1301, 2015 WL 448667, at *5–8 (Fed. Cir. Feb. 4, 2015). Therefore, although we acknowledge the imminent expiration of the '310 Patent, we continue to construe the challenged claims according to the broadest reasonable claim construction standard.

6

IPR2013-00596
Patent 7,802,310 B2

*2. "data item" and "data" (Claims 24, 32, 70, 81, 82, and 86)*

In the Decision to Institute, we construed the claim term "data item" as a "sequence of bits," which includes one of the following: (1) the contents of a file; (2) a portion of a file; (3) a page in memory; (4) an object in an object-oriented program; (5) a digital message; (6) a digital scanned image; (7) a part of a video or audio signal; (8) a directory; (9) a record in a database; (10) a location in memory or on a physical device or the like; and (11) any other entity which can be represented by a sequence of bits. We also construed the claim term "data" as a subset of a "data item." Dec. 6–8. PersonalWeb does not dispute this construction. PO Resp. 2–3. Having considered whether the construction set forth in the Decision to Institute should be changed in light of evidence introduced during trial; we are not persuaded any modification is necessary.

*3. "digital identifier"(Claim 86)*
*"content-dependent name" (Claims 24 and 32)*
*"content-based identifier" (Claims 70 and 81)*

Claim 86 recites that the "digital identifier for a particular sequence of bits, the digital identifier being based, at least in part, on a given function of at least some of the bits in the particular sequence of bits," with claims 24, 70 and 81 reciting very similar recitations for "content-dependent name," and "content-based identifier." Claim 32 provides that "the data used by the function to determine the content-dependent name of the particular data item comprises of all of the contents of the particular data item," according to that

7

IPR2013-00596
Patent 7,802,310 B2

embodiment.

In the Decision to Institute, we determined that the claims themselves provide a definition of the claim terms "digital identifier," "content-dependent name," and "content-based identifier"—namely, an identifier for a data item "being based at least in part on a given function of at least some of the bits in the particular sequence of bits of the particular data item." Dec. 8–10.

With respect to "digital identifier" and "content-based identifier," PersonalWeb notes that the above construction conflicts with the district court's construction of the same terms, but does not dispute this construction. PO Resp. 3–4.

With respect to "content-dependent name," PersonalWeb does dispute this construction, arguing that for claim 32, the limitation should be understood to be based "*at least in part on a given function of all of the bits*" (*id.* at 4), and that construing a "name" as an "identifier" would be "wrong, unreasonable and illogical." *Id.* PersonalWeb continues that one of ordinary skill in the art would have recognized the significant differences between a "name" and an "identifier," with the former allowing for reference, access, search and address of that data item. *Id.* at 4–5. Apple counters that nothing in the Specification of the '310 Patent provides for such a distinction between name and identifier, and that PersonalWeb's declarant, Dr. Robert Dewar, acknowledged the same. Reply 1–3 (citing Ex. 1035, 32). We agree with Apple.

Although claim 32 does recite that the data used comprises "all of the

8

IPR2013-00596
Patent 7,802,310 B2

contents of the particular data item," we are not persuaded that the *construction* of the claim term "content-dependent name" should vary with the scope of the claims. Once properly defined, the scope of this term in claim 32 would be different, but that would not require a different construction of the base term.

In addition, the Specification of the '310 Patent provides that "data items . . . are identified by substantially unique identifiers (True Names)" (Ex. 1001, 31:38–42), and we are persuaded that one of ordinary skill in the art, in view of the Specification of the '310 Patent, would not have determined that identifiers and names are directed to different aspects of the invention in that context. Although both PersonalWeb and Dr. Dewar opine about the distinctions between names and identifiers (PO Resp. 4–5; Ex. 2020 ¶ 23), these distinctions are not present in the Specification. As such, we are persuaded that it is reasonable to construe "content-dependent name" as an identifier for a data item being based, at least in part, on a given function of at least some of the bits in the particular sequence of bits of the particular data item.

4.    *"selectively permit" (Claim 70)*
*"selectively allow" (Claims 81 and 86)*

Claim 70 recites "*selectively permitting* the particular data item to be accessed," and claims 81 and 86 recite "*selectively allow* said particular sequence of bits to be provided to or accessed by other devices." In the Decision to Institute, we determined that, in the context of claims 70, 81, and

9

IPR2013-00596
Patent 7,802,310 B2

86, the claim terms "selectively permitting" should be construed as
"permitting based on whether the recited condition is met," and "selectively
allow" should be construed as "allowing based on whether the recited
condition is met." Dec. 10–11. PersonalWeb continues to argue that
Apple's proposed constructions, in the Petition, are wrong (PO Resp. 6–8),
but given that the particular constructions were not adopted (Dec. 10–11),
these arguments are moot.

### 5.    *"to be accessed" "accessed by" (Claims 24 and 70)*

PersonalWeb also argues that claims 24 and 70 require a "request"
that includes a content-dependent name or identifier for a corresponding data
item. PO Resp. 8. PersonalWeb continues that this is important "because
both parties *agree* that in the alleged Woodhill/Stefik combination granules
corresponding to contents identifiers in the alleged request ("update
request") are NEVER provided to the requesting computer in response to the
request." *Id.* at 9–10. Although PersonalWeb raises this argument in the
claim construction section of its Patent Owner's Response, we are not
persuaded that this is an issue of claim construction. We agree that claim 70
requires "selectively permitting the particular data item to be accessed," and
claim 24 requires that "the particular data item corresponding to the content-
dependent name is in the request is provided to or accessed by," but we find
this to be an issue of whether the combination of Woodhill and Stefik meets
the elements of the claims, not an issue of claim construction.

10

IPR2013-00596
Patent 7,802,310 B2

### B.    Principles of Law

To prevail in its challenges to the patentability of the claims, Apple must prove unpatentability by a preponderance of the evidence. 35 U.S.C. § 316(e); 37 C.F.R. § 42.1(d). A claim is unpatentable under 35 U.S.C. § 103(a) if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). To establish obviousness of a claimed invention, all the claim limitations must be taught or suggested by the prior art. *See CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1342 (Fed. Cir. 2003); *In re Royka*, 490 F.2d 981, 985 (CCPA 1974).

A patent claim composed of several elements, however, is not proved obvious merely by demonstrating that each of its elements was known, independently, in the prior art. *KSR*, 550 U.S. at 418. In that regard, for an obviousness analysis it is important to identify a reason that would have prompted one of skill in the art to combine prior art elements in the way the claimed invention does. *Id.* A precise teaching directed to the specific subject matter of a challenged claim, however, is not necessary to establish obviousness. *Id.* Rather, obviousness must be gauged in view of common sense and the creativity of an ordinarily skilled artisan. *Id.* Moreover, obviousness can be established when the prior art, itself, would have suggested the claimed subject matter to a person of ordinary skill in the art. *In re Rinehart*, 531 F.2d 1048, 1051 (CCPA 1976).

11

IPR2013-00596
Patent 7,802,310 B2

We analyze the instituted ground of unpatentability in accordance
with the above-stated principles.

### C.    *Priority of the Subject Claims*

Apple asserted that claims 24, 32, 70, 81, 82, and 86 of the '310
Patent are not entitled to the benefit of the filing date of the earliest priority
application under 35 U.S.C. § 120. Pet. 55–57. Specifically, Apple asserted
that the earliest priority application does not provide sufficient written
description support for the claim feature: "a hash function." *Id.* at 55. In the
Decision to Institute, we found that that the original disclosure of the earliest
priority application of the '310 Patent—namely, the application filed on
April 11, 1995—provides sufficient written description support for the
claimed feature "a hash function." Dec. 11–13. We are not persuaded that
any modification is necessary in light of any evidence or argument
introduced during trial. Thus, we determine that Priority Web has
established that it is entitled to the benefit of the April 11, 1995 filing date.

### D.    *Claims 24, 32, 70, 81, 82, and 86*
### *– Alleged Obviousness over Woodhill and Stefik*

Apple asserts that claims 24, 32, 70, 81, 82, and 86 of the '310 Patent
are unpatentable under 35 U.S.C. § 103(a) over the combination of Woodhill
and Stefik. Pet. 28–43. Apple provides a rationale for modifying Woodhill
in light of Stefik to arrive at the features of claims 24, 32, 70, 81, 82, and 86.

IPR2013-00596
Patent 7,802,310 B2

*Id.* at 41–42.  In support of its asserted ground of unpatentability, Apple proffers the testimony of Dr. Benjamin F. Goldberg.  Ex. 1007 ¶¶ 61–88.

Woodhill discloses a system for distributed storage management on a computer network system.  Ex. 1014, 1:11–17.  Figure 1 of Woodhill, reproduced below:



FIG. 1

Figure 1 depicts a computer network system that includes a distributed storage management system.  As illustrated in Figure 1 of Woodhill, each local area network 16 includes multiple user workstations 18 and local computers 20.  *Id.* at 3:24–44.  Woodhill's system includes a Distributed Storage Manager ("DSM") program for building and maintaining the File Database.  *Id.* at 3:44–49.

The DSM program views a file as a collection of data streams, and divides each data stream into one or more binary objects.  *Id.* at 4:13–23, 7:40–43; Fig. 5A, item 132.  More specifically, the data streams represent regular data, extended attribute data, access control list data, etc.  *Id.* at

13

IPR2013-00596
Patent 7,802,310 B2

7:44–47. For each binary object being backed up, a Binary Object
Identification Record is created in a File Database and includes a Binary
Object Identifier to identify a particular binary object uniquely. *Id*. at 7:60–
8:1, 8:33–34.

Binary Object Identifiers are calculated based on the contents of the
data so that the Binary Object Identifier changes when the contents of the
binary object changes. *Id*. at 8:57–62, 8:40–42. Notably, the Binary Object
Identifier includes a Binary Object Hash field which is calculated against the
contents of the binary object that is taken one word (16 bits) at a time using
a hash algorithm. *Id*. at 8:22–32. Duplicate binary objects can be
recognized from their identical Binary Object Identifiers, even if the objects
reside on different types of computers in a heterogeneous network. *Id*. at
8:62–65.

We agree with Apple that the Binary Object Identifiers of Woodhill
are equivalent to the "digital identifier," "content-dependent name," and
"content-based identifier" recited in claims 24, 70, 81, and 86. Pet. 31.
They are based on a cryptographic hash, with the chance of two objects
being assigned the same Binary Object Identifier being very small.
Ex. 1014, 8:33–36. Based on this, two identical items will have the same
Binary Object Identifier. Ex. 1007 ¶ 67.

Stefik discloses a system for preventing the unauthorized access to
digital works. Ex. 1013, 1:17–20. Stefik discloses receiving a request for
access to a particular digital work from a requester, including a unique
identifier for the digital work, and only providing access if it is determined

14

IPR2013-00596
Patent 7,802,310 B2

that the request is authorized. *Id.* at 9:47–49, 31:13–20, 41:60–65. As discussed by Apple, the process of matching the identifier for the work would involve comparing it with a plurality of values, and providing for selective access. Pet. 42.

Apple further contends that a person of ordinary skill in the art reading Woodhill and Stefik would have understood that the combination of Woodhill and Stefik would have allowed for the selective access features of Stefik to be used with Woodhill's content-dependent identifiers feature. Pet. 42. We agree in this regard and are persuaded that the combination of Woodhill and Stefik renders claims 24, 32, 70, 81, 82, and 86 of the '310 Patent unpatentable under 35 U.S.C. § 103.

Turning to PersonalWeb's arguments against this ground, PersonalWeb argues that the modification to Woodhill based on Stefik would not have been obvious because one of ordinary skill in the art would have wanted to minimize—not maximize—the number of comparison procedures required for access. PO Resp. 12–18. PersonalWeb continues that, based on typical large database files being restored in Woodhill, the combination would have a large number comparisons that would need to be made. *Id.* at 15–16. In other words, PersonalWeb asserts that the number of binary object identifiers and content identifiers would be in the thousand to million range, and the combination of Woodhill and Stefik would require an access determination for each. *Id.* Based on this, PersonalWeb argues that one of ordinary skill in the art would have sought to minimize the number of comparisons, and would have viewed an increase in multiple orders of

15

IPR2013-00596
Patent 7,802,310 B2

magnitude to be "wasteful, unnecessary, inefficient and costly." *Id.* at 17.
PersonalWeb also adds that Stefik already has a system for controlling
distribution of files, and that if its usage rights would have been employed in
Woodhill, if at all, they would not utilize Woodhill's unique identifiers. *Id.*
at 18.

Apple responds that none of the challenged claims require a
determination of whether access to an entire file is authorized, and that the
claims are satisfied by a determination of whether access to a data item or a
sequence of bits is authorized. Reply 8. In addition, Apple counters that "a
person of ordinary skill in the art would have known to minimize the number
of comparisons required by selecting more convenient (e.g., larger)
maximum sizes for granules and/or binary objects," and that "Woodhill is
not limited to 'large database files.'" *Id.* at 9–10. We agree with Apple.

A person of ordinary skill in the art is not an automaton, and can
apply common sense in arriving at efficient solutions. *KSR*, 550 U.S. at 421.
As Apple suggests, an ordinarily skilled artisan would have selected larger
sizes for the granules and/or binary objects for larger sized files (Reply 10),
and we are persuaded that PersonalWeb's view of such ordinarily skilled
artisans would require their rote adoption of the methods of Woodhill and
Stefik without contemplation. Additionally, as discussed above, the claims
specify access to particular data items, but do not require any minimization
of access comparisons. Thus, we do not find PersonalWeb's argument to be
persuasive.

IPR2013-00596
Patent 7,802,310 B2

Next, PersonalWeb argues that, because the system in Woodhill already has the most recent version of a file, there would have been no reason to have modified Woodhill to implement methods for checking whether access is authorized for a previous version of the same file. PO Resp. 19–22. In essence, PersonalWeb argues that, if the computer already has been permitted access to the current version of the file, common sense dictates that the computer also is authorized to access the previous versions of that same file. *Id.* PersonalWeb further argues that the rationale put forth by Apple, namely "to prevent unauthorized users from accessing a different user's back up files," makes no sense because Woodhill is concerned with current and previous versions of the same file. *Id.* at 20. We do not agree.

As Apple argues, the Woodhill system includes multiple local computers connected to the same remote backup file server, which store files and binary objects from multiple users. Reply 11; Ex. 1014, 3:25–27. It would have been obvious for one of ordinary skill in the art to have addressed whether each user or each local computer was authorized to access a particular binary object. Determining access based on binary object identifiers would have been consistent with one of the purposes of Stefik. *See* Ex. 1013, 9:47–49, 31:13–20, 41:60–65. Given the local area network disclosed in Woodhill, we are persuaded that one of ordinary skill in the art would have addressed access to multiple files, and not just multiple versions of a single file, in considering the combination of Woodhill and Stefik.

PersonalWeb also argues that Woodhill already has a system for access control, one that acts prior to the binary object identifiers being

17

IPR2013-00596
Patent 7,802,310 B2

created, such that it would not have been obvious to have used those identifiers for access, and that the "access control list data" of Woodhill, unrelated to the identifiers, would have been used instead. PO Resp. 21–22. We do not agree. An obviousness evaluation is not limited necessarily to the mere substitution of one element for another; although such a substitution may be simpler, in situations such as this, the obviousness analysis requires viewing factors such as the totality of the teachings, market forces, and background knowledge of a person of ordinary skill in the art. *KSR*, 550 U.S. at 417–18. The fact that Woodhill uses one access control method, and Stefik uses another, does not mean that one of ordinary skill in the art would not have combined the aspects of each, instead of the wholesale swapping of one for another. As discussed above, we are persuaded that one of ordinary skill in the art would have employed the selective access features of Stefik to be used with Woodhill's content-dependent identifiers feature to provide access control.

PersonalWeb argues that the teachings of Stefik would have led one of ordinary skill in the art away from the path taken by the inventors of the challenged claims. PO Resp. 22–24. PersonalWeb continues that Stefik discloses the use of unique identifiers, but does not use them for determining access and does not use them as part of Stefik's "usage rights." *Id*. We do not agree.

At most, Stefik provides for alternative means for determining access and does not "teach away" from the use of unique identifiers for access. "[T]he prior art's mere disclosure of more than one alternative does not

18

IPR2013-00596
Patent 7,802,310 B2

constitute a teaching away from any of these alternatives because such disclosure does not criticize, discredit, or otherwise discourage the solution claimed . . . ." *In re Fulton,*391 F.3d 1195, 1201 (Fed. Cir. 2004). The fact that Stefik does not teach specifically that unique identifiers are used for determining access is not sufficient to constitute a teaching away, as PersonalWeb has alleged.

Similarly, PersonalWeb argues that certain aspects of Stefik's system are disclosed to be "fundamental" or "key" requirements, and one would not have modified Woodhill based on Stefik without utilizing such features. PO Resp. 26. According to PersonalWeb, Stefik determines that the connections between the usage rights and the works are fundamental, and combining the teachings of Woodhill and Stefik would render Stefik's distribution control system inoperable for its intended purpose if the usage rights were not part of the corresponding file. *Id.* at 26–28. We do not agree.

PersonalWeb's argument in this regard mischaracterizes Stefik's disclosure regarding usage rights. Stefik provides that "the usage rights *are treated as* part of the digital work" and that "[t]he attachment of usage rights into a digital work may occur *in a variety of ways*" (Ex. 1013, 11:15–30 (emphases added)), not necessarily suggesting the bodily incorporation of those usage rights. Additionally, Stefik provides that "[a] key feature of the present invention is that the usage rights are permanently *'attached'* to the digital work" (*id.* at 6:44–45 (emphasis added)), with the use of quotation marks suggesting that the rights need not become a part of the work necessarily. The connection between the usage rights and the work is key,

19

IPR2013-00596
Patent 7,802,310 B2

indeed, but Stefik does not disclose that this must be accomplished in only one way. PersonalWeb makes much of Apple's affiant, Dr. Goldberg, acknowledging that "because the binary object identifier 74 is calculated from the contents of the binary object, *it cannot be part of the binary object*" (PO Resp. 27; Ex. 2015, 123–124 (emphasis in original)), but we do find this to be persuasive. Given that the binary object identifier is calculated from the contents of the binary object, it is connected to, and directly attributable to, the contents. We are not persuaded that such connections would run counter to the express concerns in Stefik that the identifier be "a part of" the digital work. As such, we are not persuaded that combining the teachings of Woodhill and Stefik would render Stefik's distribution control system inoperable for its intended use.

PersonalWeb also argues that the identifiers in Woodhill and Stefik are not being used for their intended purposes in the combination, and that they would not perform the same functions. PO Resp. 24–25. We are not persuaded, however, because we agree with Apple that the challenged claims have not been limited "'to control the distribution of files or determine whether access to data is authorized.'" Reply 13 (citing PO Resp. 25). The challenged claims require, for example, "selectively permitting the particular data item to be accessed," but do not limit the use of the claimed identifiers as PersonalWeb has alleged. As such, we are not persuaded that the identifiers in Woodhill and Stefik are being used contrary to their intended purposes in the proffered combination.

20

IPR2013-00596
Patent 7,802,310 B2

Additionally, PersonalWeb argues that granules in Woodhill, in response to an update request, are never provided to the requesting computer, such that Woodhill's granules cannot meet the limitations of the claims. PO Resp. 30–32. PersonalWeb suggests that the Institution Decision only relies on the binary objects and content-based identifiers in Woodhill, instead of the granules. *Id*. at 30. Even if true, this does not appear to be an argument against the instant ground in this proceeding and would appear to moot (i.e., addressing only one aspect of Woodhill).

PersonalWeb also argues that the identifier in the Woodhill/Stefik combination is not a "name" and is not used for accessing. PO Resp. 32–36. PersonalWeb reiterates its arguments distinguishing a "name," from an "identifier," as discussed in the claim construction section above, we agree that the terms may be distinctive, but, in this case, the Specification of the '310 Patent does not make that distinction. Even so, PersonalWeb argues that "Woodhill does not use a hash as a file name, or as a substitute for a name, in a computer network." *Id*. at 33. In addition, PersonalWeb argues that Woodhill's binary object identifiers are not used to access, search for, or address binary objects. *Id*. at 34. PersonalWeb also points out that Woodhill discloses the use of names, but that this disclosure was added to Woodhill later and, thus, is not prior art to the instant claims. *Id*. at 35–36. We do not find these arguments to be persuasive.

As Apple points out, "the 'update request' described in Woodhill 'includes the Binary Object Identification Record 58' for the requested binary object." Reply 5; Ex. 1014, 17:40–46. Thus, the update request

21

IPR2013-00596
Patent 7,802,310 B2

utilizes the binary object identifier, which is part of the binary object
identification record. The challenged claims do not require that the
identifier be used synonymously with the filename, only that a determination
be made as to whether the content-based identifier for the particular data
item corresponds to an entry in a database, and access be provided, if
appropriate, based, at least in part, on that determination. We are not
persuaded that the challenged claims require more than is disclosed in
Woodhill and Stefik.

PersonalWeb argues that Woodhill fails to make a determination as to
whether access to a given data item is not authorized, as recited in claims 24,
70, and 81. PO Resp. 36–41. As discussed above, however, Stefik discloses
receiving a request for access to a particular digital work from a requester,
including a unique identifier for the digital work, and only providing access
if it is determined that the request is authorized. Ex. 1013, 9:47–49, 31:13–
20, 41:60–65. One cannot show nonobviousness by attacking references
individually where the rejections are based on combinations of references.
*In re Merck & Co., Inc.,* 800 F.2d 1091, 1097 (Fed. Cir. 1986). Given that
Stefik makes the determinations recited in claims 24, 70, and 81, we are not
persuaded by PersonalWeb's arguments.

### E.    *Secondary Considerations of Nonobviousness*

In addition to the specific arguments directed to the alleged
deficiencies of the prior art combination, PersonalWeb also argues that
objective indicia of nonobviousness weigh against finding the claims

IPR2013-00596
Patent 7,802,310 B2

obvious. PO Resp. 41–42. PersonalWeb argues that others have licensed
the instant patent, where such licenses were not taken for settling any patent
litigation, and this represents evidence of nonobviousness. *Id.*; Exs. 2016–
2018. Additionally, PersonalWeb argues that copying by others and long-
felt need were identified in the prosecution history (Ex. 1016, 379), and are
further evidence of non-obviousness. PO Resp. 42. Although we appreciate
the success PersonalWeb cites in its Patent Owner Response, we are not
persuaded that, when analyzed together with the previously discussed prior
art evidence, this success outweighs the strong evidence of obviousness
presented by Apple.

   "It is well settled 'that objective evidence of non-obviousness must be
commensurate in scope with the claims which the evidence is offered to
support.'" *In re Grasselli*, 713 F.2d 731, 743 (Fed. Cir. 1983) (quoting
*In re Tiffin*, 448 F.2d 791, 792 (CCPA 1971)). The objective evidence is not
commensurate (coextensive) in scope with the claimed subject matter if the
claims are broader in scope than the scope of the objective evidence, e.g., if
the product included elements or features not recited in the claims which
may be responsible for the commercial success or praise. *See Joy Techs.,
Inc. v. Manbeck*, 751 F.Supp. 225, 229–30 (D.D.C. 1990)(and cases cited
therein) *aff'd* 959 F.2d 226 (Fed. Cir. 1992). This is related to the nexus
requirement – where the objective evidence of non-obviousness is not
commensurate in scope with the claimed invention, it is more difficult (but
not impossible) to show that objective evidence is due to the merits of the
claimed invention as opposed to unclaimed features.

IPR2013-00596
Patent 7,802,310 B2

> [E]vidence of commercial success alone is not sufficient to demonstrate nonobviousness of a claimed invention. Rather, the proponent must offer proof "that the sales were a direct result of the unique characteristics of the claimed invention—as opposed to other economic and commercial factors unrelated to the quality of the patented subject matter."

*In re DBC*, 545 F.3d 1373, 1384 (Fed. Cir. 2008) (citations omitted).

PersonalWeb relies on three license agreements as evidence to support its argument that the challenged claims are not obvious; however, the relied upon agreements grant licenses to a wide variety of U.S. and foreign "True Name patents." Ex. 2019, ¶¶ 3–9. PersonalWeb has not provided sufficient or credible evidence that the subject matter of the challenged claims motivated the decision to license. Additionally, as noted by Apple, each of the three licenses involved related parties with interlocking ownership and/or business interests, and not three truly separate licensees. Reply 14–15. In addition, although PersonalWeb has pointed to evidence of copying and long-felt, but unmet need in the prosecution history, no attempt has been made to establish a nexus between that evidence and the specific claim limitations present in the challenged claims. As such, we are not persuaded that PersonalWeb has shown that its secondary indicia of nonobviousness are coextensive with the scope of the claims, or that the presented evidence is sufficient to overcome the obviousness conclusion discussed above.

We are persuaded that Apple has shown by a preponderance of the evidence that 24, 32, 70, 81, 82, and 86 of the '310 Patent are unpatentable under 35 U.S.C. § 103(a) over the combination of Woodhill and Stefik.

IPR2013-00596
Patent 7,802,310 B2

### III.     CONCLUSION

We conclude that Apple has shown by a preponderance of the
evidence that claims 24, 32, 70, 81, 82, and 86 are unpatentable under
35 U.S.C. § 103(a) as obvious over the combination Woodhill and Stefik.

### IV.     ORDER

In consideration of the foregoing, it is hereby:

ORDERED that claims 24, 32, 70, 81, 82, and 86 of the '310 Patent
are held unpatentable; and

FURTHER ORDERED that, because this is a Final Written Decision,
parties to the proceeding seeking judicial review of the Decision must
comply with the notice and service requirements of 37 C.F.R. § 90.2.

25

IPR2013-00596
Patent 7,802,310 B2

For PETITIONER:

David K.S. Cornwell
Mark W. Rygiel
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
davidc-PTAB@skgf.com
mrygiel-PTAB@skgf.com

For PATENT OWNER:

Joseph A. Rhoa
Updeep S. Gill
NIXON & VANDERHYE P.C.
jar@nixonvan.com
usg@nixonvan.com

Trial@uspto.gov
571-272-7822

Paper 35
Entered: August 3, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

APPLE, INC.,
Petitioner

v.

PERSONALWEB TECHNOLOGIES, LLC, and
LEVEL 3 COMMUNICATIONS, LLC,
Patent Owners.

_____

Case IPR2013-00596
Patent 7,802,310 B2

_____

Before KEVIN F. TURNER, JONI Y. CHANG, and
MICHAEL R. ZECHER, *Administrative Patent Judges.*

TURNER, *Administrative Patent Judge.*

DECISION
Request for Rehearing
*37 C.F.R. §§ 42.71(c) and (d)*

Case IPR2013-00596
Patent 7,802,310 B2

## INTRODUCTION

PersonalWeb Technologies, LLC and Level 3 Communications, LLC
(collectively "PersonalWeb") filed a Request for Rehearing (Paper 34, "Req.") of
the Final Written Decision (Paper 33, "Dec."), which found that Apple, Inc.
("Apple") had shown by a preponderance of the evidence that all challenged
claims in the instituted proceeding, claims 24, 32, 70, 81, 82, and 86 of U.S. Patent
No. 7,802,310 B2 ("the '310 Patent," Ex. 1001), are unpatentable.   In its request,
PersonalWeb contends that we applied the wrong claim construction standard to
the challenged claims, that we overlooked and misapprehended the legal
significance of PersonalWeb's nonobviousness arguments, and that we failed to
address all of the factors considered in *Graham v. John Deere Co. of Kansas City*,
383 U.S. 1, 17–18 (1966) ("*Graham*").  Req. 1–9.

The Request for Rehearing is *denied.*

## ANALYSIS

A request for rehearing must identify specifically all matters the party
believes we misapprehended or overlooked, and the place where each matter was
addressed previously in a motion, an opposition, or a reply. 37 C.F.R. § 42.71(d);
*see also* 37 C.F.R. § 42.120(a) (stating that a patent owner response is filed as an
opposition).  An abuse of discretion may be determined if a decision is based on an
erroneous interpretation of law, if a factual finding is not supported by substantial
evidence, or if the decision represents an unreasonable judgment in weighing
relevant factors. *Star Fruits S.N.C. v. U.S.*, 393 F.3d 1277, 1281 (Fed. Cir. 2005);

Case IPR2013-00596
Patent 7,802,310 B2

*Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004); and *In re Gartside*, 203 F.3d 1305, 1315-16 (Fed. Cir. 2000).

PersonalWeb alleges that we applied the wrong claim construction standard to the challenged claims, arguing that we misapprehended the issue in our Final Written Decision. Req. 1, citing Dec. 5–6. We disagree.

A Request for Rehearing naturally must evaluate the priority of a decision at the time it was issued. We concluded that we "construe the challenged claims according to the broadest reasonable claim construction standard." Dec. 6. The fact that the '310 Patent expired on April 11, 2015, does not alter whether the correct standard was applied at the time that Final Written Decision was issued, on March 25, 2015. We agree with PersonalWeb that any document "authored or generated by the USPTO after the '310 Patent has expired cannot use the [Broadest Reasonable Construction] standard," Req. 2, but the Final Written Decision in this proceeding was not such a document.

PersonalWeb also argues that we should have used the *Phillips* (*Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*)) standard because "there was no opportunity for patent owner to amend claims in this proceeding." Req. 2. However, it is uncontroverted that PersonalWeb had the opportunity to amend the claims, although PersonalWeb has claimed and continues to claim that it "would have been futile." *Id.* We are not persuaded that a patent owner's expectations of the likelihood that a motion to amend will be successful should be the proper metric to determine which claim construction standard should be applied. *See also In re Cuozzo Speed Techs., LLC,* No. 2014-1301, 2015 WL 4097949, *7-8 (Fed. Cir. July 8, 2015) ("Congress implicitly approved the broadest

3

Case IPR2013-00596
Patent 7,802,310 B2

reasonable interpretation standard in enacting the AIA," and "the standard was properly adopted by PTO regulation.").

Additionally, we take no position on whether the application of the differing claim construction standards would provide "a meaningful distinction," Req. 3, as any position we take would be merely dicta in view of the Final Written Decision. To the extent that PersonalWeb is inviting us to reevaluate our adopted claim construction under another standard, we respectfully decline, and we are persuaded that this Decision on Request for Rehearing is not the proper vehicle to perform such a reevaluation.

PersonalWeb also alleges that *KSR (KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007)) asserts that "it is the combination of old elements for their intended purpose, with each element performing the same function it had been known to perform, that may be obvious." Req. 6. PersonalWeb continues that the alleged combination of Woodhill does not use Woodhill's or Stefik's identifiers for their intended purposes, or to perform the same function they were known to perform. *Id.* PersonalWeb alleges that "[a]s a matter of law, it would not have been obvious to have used binary object identifiers 74 in an access control system to determine whether access is authorized or unauthorized in view of Woodhill and Stefik." *Id.* at 6–7. We do not agree.

We addressed this argument in the Final Written Decision (Dec. 20), finding that the claims do not require that claimed identifiers be used *only* to determine access authorization. Certainly, as PersonalWeb argues (Req. 7–8), claim 24 determines access based on the content-dependent name, but the claims do not limit its use to access authorization only. The Specification of the '310 Patent

4

Case IPR2013-00596
Patent 7,802,310 B2

provides for the use of identifiers to determine presence of a data item, to allow for redundancy, to provide version control, to verify retrieved data, and to provide tracking. Ex. 1001, 3:52–4:59. As such, PersonalWeb's arguments take too limited of a view of the functions performed by the identifiers in Woodhill and Stefik, and we continue to be persuaded that the identifiers in Woodhill and Stefik are not being used contrary to their intended purposes in the proffered combination. Dec. 20. Similarly, we also previously considered PersonalWeb's argument that Woodhill already has an authorization system and there would have been no logical reason to have modified Woodhill (Req. 7; Dec. 17-18), and we are not persuaded that we overlooked or misapprehended that prior argument.

Finally, PersonalWeb also alleges that the Final Written Decision failed to address all of the factors provided in *Graham*. Req. 8–9. More specifically, PersonalWeb argues that we overlooked factors (2) and (3), namely: (2) differences between the claimed subject matter and the prior art and (3) the level of skill in the art. PersonalWeb is mistaken, however, in that a final written decision is not an office action containing a rejection that must provide a complete evaluation of the *Graham* factors to conclude obviousness. A final written decision determines if a petitioner has shown by a preponderance of the evidence that subject claims are unpatentable. Thus, the Final Written Decision need not make findings as to all of the *Graham* factors, as long as Petitioner has provided such consideration in the Petition.

In any event, the Final Written Decision provided such considerations (Dec. 15, citing Pet. 42), stating that "a person of ordinary skill in the art reading Woodhill and Stefik would have understood that the combination of Woodhill and

5

Case IPR2013-00596
Patent 7,802,310 B2

Stefik would have allowed for the selective access features of Stefik to be used with Woodhill's content-dependent identifiers feature." *Id*. The differences between the claims and the prior art, as well as the level of skill in the art, are implicitly provided in Apple's analysis asserted in the Petition. Additionally, although PersonalWeb noted the *Graham* factors in its Patent Owner's Response (PO Resp. 11–12), it did not allege that Apple's ground was deficient for failing to consider all of the *Graham* factors. Thus, we could not have overlooked or misapprehended arguments not made until the request for rehearing.

For the forgoing reasons, PersonalWeb has not shown that we misapprehended or overlooked any of the matters identified above in concluding this *inter partes* review in its Final Written Decision.

## CONCLUSION

PersonalWeb's request for rehearing is *denied*.

Case IPR2013-00596
Patent 7,802,310 B2

For PETITIONER:

David K.S. Cornwell
Mark W. Rygiel
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
davidc-PTAB@skgf.com
mrygiel-PTAB@skgf.com

For PATENT OWNERS:

Joseph A. Rhoa
Updeep S. Gill
NIXON & VANDERHYE P.C.
jar@nixonvan.com
usg@nixonvan.com

7

## CERTIFICATE OF SERVICE

I hereby certify that on Sept. 30, 2015, the foregoing PATENT OWNER'S

NOTICE OF APPEAL was electronically filed through the Patent Trial and Appeal

Board's Patent Review Processing System (PRPS).  In addition, the original

version of the foregoing PATENT OWNER'S NOTICE OF APPEAL was filed by

hand on Sept. 30, 2015, with the Director of the United States Patent and

Trademark Office, at the following address:

> Director of the United States Patent and Trademark Office
> c/o Office of the General Counsel, 10B20
> Madison Building East
> 600 Dulaney Street
> Alexandria, VA 22314-5793

I further certify that three (3) true and correct copies of the foregoing,

PATENT OWNER'S NOTICE OF APPEAL, and the filing fee were filed by hand

on Sept. 30, 2015, with the Clerk's Office of the United States Court of Appeals

for the Federal Circuit, at the following address:

> United States Court of Appeals for the Federal Circuit
> 717 Madison Place, N.W., Suite 401
> Washington, DC 20005

I further certify that a true and correct copy of the foregoing, PATENT

OWNER'S NOTICE OF APPEAL, was served via First Class U.S. Mail and by

electronic mail (in accordance with the parties' electronic service agreement) on

Sept. 30, 2015, on the following counsel of record for Petitioner:

> David Cornwell – Lead Counsel
> Mark Rygiel – Back-Up Counsel
> Sterne, Kessler, Goldstein & Fox PLLC
> 1100 New York Ave., NW
> Washington, DC  20005
> (davidc-PTAB@skgf.com)
> (mrygiel-PTAB@skgf.com)

> Michael D. Jay – Back-Up Counsel
> Boies, Schiller & Flexner LLP
> 401 Wilshire Boulevard
> Suite 850
> Santa Monica, CA 90401
> (mjay@bsfllp.com)

/Joseph A. Rhoa/
Joseph A. Rhoa